UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT WOODS,

       Plaintiff,                                        Hon. Janet T. Neff

v.                                                        Case No. 1:09-CV-585

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 46 years of age at the time of the ALJ's decision. (Tr. 23, 71). He successfully completed high school and worked previously as a welder, maintenance oiler, and machine operator. (Tr. 86, 92, 99-102).

Plaintiff applied for benefits on September 2, 2005, alleging that he had been disabled since March 1, 2005, due to depression and shoulder pain. (Tr. 71-73, 85). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-81). On February 8, 2008, Plaintiff appeared before ALJ Douglas Johnson, with testimony being offered by Plaintiff and vocational expert, Richard Riedl. (Tr. 272-98). In a written decision dated May 27, 2008, the ALJ determined that Plaintiff was not disabled. (Tr. 14-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

# **RELEVANT MEDICAL HISTORY[1]**

In 2003, Plaintiff underwent distal clavicle excision surgery on his left shoulder. (Tr. 153). On April 21, 2004, Plaintiff participated in an MRI examination of his right shoulder, the results of which revealed "mild right AC joint separation." (Tr. 186-87). An MRI examination of Plaintiff's left shoulder revealed "mild" tendinitis with no evidence of a rotator cuff tear. (Tr. 186-87).

On March 16, 2005, Dr. Quinter Burnett performed surgery on Plaintiff's right shoulder to treat right acromioclavicular joint arthritis. (Tr. 144-47). Following a March 24, 2005 examination, Dr. Burnett reported that Plaintiff's right shoulder "looks very good." (Tr. 153). Plaintiff was instructed to begin performing "some simple exercises, nothing strenuous, nothing overhead." (Tr. 153). Plaintiff also reported that he was "having some trouble in the left shoulder." (Tr. 153). An examination revealed that Plaintiff's distal clavicle excision was "doing fine." (Tr. 153). The doctor concluded that Plaintiff's pain was "more lateral, typical for a mild rotator cuff tendinitis type of situation." (Tr. 153).

On April 7, 2005, Plaintiff was examined by Dr. Burnett. (Tr. 152). An examination of Plaintiff's right shoulder revealed that it was "gradually improving," but Plaintiff reported that he was experiencing "significant" pain in his left shoulder. (Tr. 152). The doctor reiterated that Plaintiff appeared to be experiencing tendinitis, but scheduled Plaintiff for an MRI to make sure that Plaintiff had not suffered "some type of new injury" to his shoulder. (Tr. 152). On April 15, 2005,

---

[1] Plaintiff is not challenging the ALJ's findings and conclusions regarding his alleged emotional impairment. The following discussion of the medical record will, therefore, focus on Plaintiff's alleged physical impairments.

4

Plaintiff participated in an MRI examination of his left shoulder, the results of which were "unremarkable," with "no evidence of any rotator cuff problems." (Tr. 151, 154).

A May 12, 2005 examination of Plaintiff's shoulders revealed that he was experiencing limited range of motion, but was "neurovascularly intact." (Tr. 151). The results of a June 2, 2005 examination revealed similar results. (Tr. 150). Dr. Burnett concluded that he needed to "control [Plaintiff's] pain more before he can even get stronger in therapy." (Tr. 150). Accordingly, the doctor recommended that Plaintiff attend a pain clinic. (Tr. 150).

Treatment notes dated August 24, 2005, reveal that Plaintiff had recently been examined at the Kalamazoo Pain Clinic, but "didn't want to go along with their recommendations." (Tr. 159). Specifically, Plaintiff reported that he "did not want anything involving needle (epidural), did not want TENS unit, or P.T." (Tr. 159). Plaintiff indicated that he instead simply wanted stronger pain medication, as Vicodin was "not working." (Tr. 159).

On September 2, 2005, Plaintiff was examined by Dr. Matthew Kuiper, with Southern Michigan Pain Consultants, PC. (Tr. 236-37). Plaintiff reported that he was experiencing bilateral shoulder pain. (Tr. 236). Plaintiff exhibited limited range of motion in both shoulders. (Tr. 237). Plaintiff exhibited pain to palpation, but the doctor could not discern any specific trigger points. (Tr. 237). Dr. Kuiper determined that Plaintiff was experiencing subdeltoid bursitis in his left shoulder and myofascial pain in his right shoulder. (Tr. 237). The doctor recommended to Plaintiff that he undergo a subdeltoid bursa injection and a nerve block injection. (Tr. 237). Plaintiff declined and instead requested additional medication. (Tr. 237). Dr. Kuiper reiterated that the injections would relieve Plaintiff's pain, but further noted that "[b]ased on our conversation today, it does not appear

5

that [Plaintiff] has been willing to follow through with many of the other physicians that he has seen in the past." (Tr. 237).

On October 20, 2005, Plaintiff was examined by Dr. Burnett. (Tr. 238). Plaintiff reported that he was experiencing "significant discomfort" in both shoulders. (Tr. 238). The doctor noted that various methods of treatment had produced "minimal to no benefit." (Tr. 238). Accordingly, Dr. Burnett concluded that Plaintiff be permanently limited from performing the following work activities: (1) no lifting more than five pounds; (2) no repetitive reaching; and (3) no overhead activities. (Tr. 238).

On November 26, 2005, Plaintiff participated in a consultive examination conducted by Dr. Michael Simpson. (Tr. 217-20). Plaintiff reported that as a result of difficulties with both shoulders, he "can't do anything." (Tr. 217). Specifically, Plaintiff reported that he "has difficulty fishing, doing dishes, household activities or lifting objects over his head." (Tr. 217). An examination of Plaintiff's shoulders revealed "diminished range of motion in the shoulder joints, more prominent on the right than the left." (Tr. 218-19). Plaintiff exhibited "normal" motor strength and function. (Tr. 219). His grip strength was "fairly well maintained" and he was able to pick up a coin, button clothing, and open a door with both upper extremities. (Tr. 219). Plaintiff exhibited "minimal" atrophy in the right shoulder and "no active synovitis was noted in either [shoulder] joint." (Tr. 219). Plaintiff's sensory function was "intact" and Romberg testing[2] was negative. (Tr. 219).

---

[2] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on July 12, 2010). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

At the administrative hearing, Plaintiff testified that he "can't use [his] arms anymore." (Tr. 280). He reported that he "can't lift stuff" and "[i]t constantly hurts." (Tr. 280). Plaintiff reported that he cannot reach overhead. (Tr. 280-81). Plaintiff reported that he obtains "some" relief from his medication, as well as from "heating pads and showers." (Tr. 281-82). He rated his shoulder pain as 8-9 on a scale of 1-10. (Tr. 289). When asked why he "didn't follow through on some of the proposals. . .[from the] pain management people," Plaintiff responded, "[t]hey wanted to give me some type of infusion, injection thing, and they wanted me to go on morphine patches and I was just, didn't want to take that kind of medication." (Tr. 286-87).

## **ANALYSIS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from (1) arthritis in both shoulders; and (2) adjustment disorder with depressed mood, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 16-20). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 20-23). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a

---

[3]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work subject to the following limitations: (1) he

---

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

can lift/carry no more than five pounds; (2) during an 8-hour workday, he can stand and/or walk and sit for six hours each; (3) he cannot engage in overhead use of his upper extremities; (4) he can occasionally reach with his upper arms away from his body; (5) he cannot operate vibrating hand tools; and (6) he can understand, remember, and carry out short simple instructions. (Tr. 20). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Richard Riedl.

The vocational expert testified that there existed approximately 9,300 jobs in the lower peninsula of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 295-96). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500

9

jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006) (870 jobs in region constitutes a significant number).

        a.        The ALJ Properly Assessed the Medical Evidence

On December 15, 2005, Physician's Assistant Christine Heyn reported that Plaintiff was disabled from performing his previous employment as well as "any occupation." (Tr. 232). Heyn reiterated this conclusion on November 27, 2007. (Tr. 231). Plaintiff asserts that the ALJ failed to accord sufficient weight to Physician's Assistant Heyn's opinions. This argument fails for several reasons.

First, Heyn did not articulate any functional limitations from which Plaintiff allegedly suffered, but instead simply asserted her conclusory opinion that Plaintiff is disabled. Such opinions are entitled to no deference as the determination of disability is a matter left to the commissioner. *See* 20 C.F.R. § 416.927(e)(1). Second, as Heyn is a Physician's Assistant she is not considered an acceptable medical source whose opinions are entitled to any deference. *See* 20 C.F.R. §§ 416.913(d)(1), 416.927. Finally, Heyn's opinion is inconsistent with that expressed by Plaintiff's treating physician, Dr. Burnett, who concluded that Plaintiff could perform work subject to the following limitations: (1) no lifting more than five pounds; (2) no repetitive reaching; and (3) no overhead activities. The ALJ expressly adopted Dr. Burnett's opinion, which is consistent with the medical evidence of record. The ALJ expressly considered Heyn's opinions, concluding that "[i]n addition to not being supported by the medical record, Ms. Heyn's opinions. . .will not be given

substantial weight since she is a certified physician's assistant and is not considered an acceptable medical source." (Tr. 21). The ALJ's decision to afford little weight to Heyn's opinions is supported by substantial evidence.

b. This Court Lacks Jurisdiction over the Appeals Council

As previously noted, after the ALJ denied Plaintiff's claim, Plaintiff requested that the Appeals Council review the ALJ's decision. The Appeals Council declined to do so. Plaintiff asserts that the failure by the Appeals Council to consider his request for review entitles him to relief.

Where the Appeals Council denies a claimant's request to review an ALJ's decision, the ALJ's decision becomes the Commissioner's final decision. *See, e.g., Carmack v. Barnhart*, 147 Fed. Appx. 557, 559 (6th Cir., Aug. 31, 2005) ("[w]here, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner"). The jurisdiction of this Court extends only to review of final decisions issued by the Commissioner of Social Security. *Id.* ("[p]ursuant to 42 U.S.C. § 405(g), we may review the Commissioner's final decisions"). As the decision by the Appeals Council not to review the ALJ's decision is not a final decision by the Commissioner, such is beyond the authority of this Court to review. Accordingly, this argument is without merit.

c. Plaintiff is not entitled to Remand

As part of his brief in this Court, Plaintiff has submitted what purports to be a statement from Dr. Kenneth O'Neill. (Dkt. #8). Plaintiff asserts that consideration of Dr. O'Neill's

11

opinion entitles him to relief. This Court is precluded from considering such material. *See Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

Plaintiff cannot satisfy this standard for at least two reasons. First, Plaintiff has failed to even suggest that there exists good cause for his failure to present this information to the ALJ. Second, the material in question does not support Plaintiff's claim for benefits. The statement is not even signed or properly authenticated. Moreover, Dr. O'Neill does not assert that he ever examined Plaintiff, but instead simply asserts that he agrees with Christine Heyn's conclusory opinion that Plaintiff is disabled. It is not reasonable to assert that consideration of this material by the ALJ would have led to a different result. Accordingly, the Court is precluded from considering this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: July 16, 2010 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge